## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Burhaan Saleh, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>VOLVO CAR USA, LLC; VOLVO CAR CORPORATION<br><br>*Defendant*. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Burhaan Saleh, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following for his Complaint against Defendants Volvo Car USA, LLC and Volvo Car Corporation. Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

## PRELIMINARY STATEMENT

1.      Vehicle manufacturers have certain basic rules and procedures that must be followed. When a vehicle manufacturer sells a vehicle, it has a duty to ensure that the vehicle functions properly and safely for its advertised use and is free from defects. When a vehicle manufacturer discovers a defect, it must explicitly disclose the defect and make it right or cease selling the vehicle. When a vehicle manufacturer provides a warranty, it must stand by that warranty. This case arises from Defendant's breach of these listed duties and rules.

2.      Plaintiff brings this action on behalf of himself, and all similarly situated persons who purchased or leased certain Volvo plug-in hybrid models that were recalled and manufactured

from the years 2020 through 2022 ("Class Vehicles"). The recall applies to the following

Volvo Plug- in hybrid models[1]:

| MAKE | MODEL | YEARS |
|---|---|---|
| Volvo | S90 | 2020-2021 |
| Volvo | S60 | 2020-2022 |
| Volvo | V60 | 2020-2022 |
| Volvo | XC60 | 2020-2022 |
| Volvo | XC90 | 2020-2022 |
| Volvo | V90 | 2022 |

3.     This action is brought to remedy various violations of law in connection with

Defendant's manufacture, marketing, advertising, selling, warranting, and servicing of the

Class Vehicles.

4.     Specifically, these Class Vehicles have malfunctions regarding the possibility of the

high-voltage battery experiencing a short circuit within the battery module when the battery

is fully charged, and the vehicle is parked.[2]

5.     On March 20, 2025, Volvo recalled nearly 73,000 plug-in hybrids worldwide,

including 7,483 in the United States of the above referenced Class Vehicles ("Recall").[3]

6.     The allegations herein are based on personal knowledge as to Plaintiff's own

experience and are made as to other matters based on an investigation by counsel, including

---

[1] https://www.fox6now.com/news/volvo-recall-plug-in-hybrid-vehicles-fire-risk-stop-charging (last accessed on April 3, 2025)
[2] Id.
[3] https://electriccarsreport.com/2025/03/volvo-recalls-nearly-73000-plug-in-hybrids-due-to-fire-risk/#:~:text=What%20is%20this?,that%20concluded%20with%20this%20recall. (last accessed on April 3, 2024)

analysis of publicly available information.

**JURISDICTION AND VENUE**

7.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendants, on the other, are citizens of different states.

8.    Defendants sell their products internationally, throughout the United States and within this judicial district.  This Court has personal jurisdiction over Defendants because Defendants have purposefully availed itself to this District's jurisdiction and authority, given Defendants' minimum contacts within this District through Defendants' extensive marketing, advertising, and sale of the Product throughout this District. See *Mallory v. Norfolk Southern Railway Co.*, 143 S.Ct. 2028, 600 U.S. 122, 216 L.Ed. 815 (2023).

9.    Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, given that Defendant sells and distributes their vehicles throughout the United States and within this District.

**PARTIES**

10.    Burhaan Saleh is a citizen of the State of California and resides in Upland, California. Upland is located within San Bernardino County, California.

11.    Plaintiff purchased and currently owns a 2020 Volvo XC60.

12.    Based on Volvo's active and persistent promotions touting the quality of its vehicles and his admiration of Volvo vehicles, Plaintiff considered Volvo a quality company with a

strong reputation for producing reliable and safe vehicles.

13.    In addition to Volvo's reputation through its marketing and promotion, Plaintiff decided on the XC60 because he believed it was a high-quality vehicle after a salesman convinced him that the vehicle was safe, highly reliable and came with great technological features.

14.    Plaintiff has never been told of any recalls or defects related to the battery. Plaintiff was never informed that the high – voltage battery may experience a short circuit within the battery module when the battery is fully charged, and the vehicle is parked.

15.    Defendant Volvo Car USA, LLC is a Delaware Limited Liability Company, with its principal place of business located at 1800 Volvo Pl, Mahwah, NJ 07430.  Defendant is a limited liability company registered to do business under the laws of the State of Pennsylvania.

16.    Defendant Volvo Car Corporation is a Swedish corporation with a place of business at VAK Building, Assar Gabrielssons vag, Goteborg, SE-405 31, Sweden.  On information and belief, Volvo Car Corporaiton is the wholly owned subsidiary of Zhejiang Geely Holding Group Co., Ltd.

17.    Defendants design, manufacture, market, distribute, service, repair, sell, and lease vehicles, including the Class Vehicles, nationwide and in the state of California and Pennsylvania. Defendants are the warrantor and distributors of the Class Vehicles in the United States.

18.    Defendants, through various entities, market, distribute, warrant, and sell Volvo automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States, including the states of California and Pennsylvania.

## FACTUAL ALLEGATIONS

19.    As discussed earlier and in more detail below, the Class Vehicles contain a design defect that causes a serious safety concern. The design defect with the Class Vehicles is contained in the high-voltage battery.

20.     In more detail, the Class Vehicle's problem stems from a potential short circuit on the high-voltage battery since in the SPA platform, batteries are not installed under the boot floor but in the center of the vehicle, the transmission tunnel. Under certain conditions, these battery cells may experience an internal short circuit, potentially leading to "thermal runaway", better known as a fire risk.[4]

21.    As demonstrated by the facts above, there is no foreseeable reason for any of the individual parts to fail. Rather, the failure is caused by Defendant's improper engineering, design, or manufacturing.

22.    Over 7,000 of the Class Vehicles with a defective battery module have been sold in United States.

23.    The result of Defendants' Recall, which includes a thorough inspection to identify any cell deviations within the battery module, a software update to enhance battery module monitoring and, in case that issues are found, a replacement of the module, will cost Plaintiff hours of his time.

24.    Even if one was to presume that the Recall was effective and offered a true fix, which is by no means a fair presumption, Plaintiff is still burdened with a vehicle that has been devalued by Defendants' actions because the value of a car with a known history of a

---

[4] https://electriccarsreport.com/2025/03/volvo-recalls-nearly-73000-plug-in-hybrids-due-to-fire-risk/#:~:text=What%20is%20this?,that%20concluded%20with%20this%20recall. (Last accessed on April 3, 2025.

defective battery and a potential fire hazard is worth much less than a car with properly working battery module, or at least not having a history of defects with risks of the car catching on fire.

25.     In addition to the sheer amount of time spent in repair, Plaintiff, like every other Class Member, must spend time and money to transport himself and his defective Class Vehicle to a Volvo certified mechanic.

26.     In addition to the sheer amount of time spent in repairing his vehicle, Plaintiff is faced with another difficult expense, the price of towing his vehicle. The average cost of towing, per mile, is $4.75 per mile.[5]

27.     Given the additional time it takes for a tow truck to arrive, roughly thirty minutes, Plaintiff would spend more than an hour on his vehicle, unless of course, one is to assume that Plaintiff drives his potentially flammable Class Vehicle to the dealership.

28. In all, Defendants' Recall amounts to tens of thousands of hours and dollars needlessly taken from Plaintiff and other Class Vehicle owners.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

> **Nationwide Class:** All persons in the United States who purchased or leased certain recalled Volvo Models: 2020-2021 S90, 2020-2022 S60, V60, XC60, XC90, and 2022 V90 plug-in hybrid vehicles.

> **Pennsylvania Subclass:** All persons in Pennsylvania who purchased or leased certain recalled Volvo Models: 2020-2021 S90, 2020-2022 S60, V60, XC60, XC90, and 2022 V90 plug-in hybrid vehicles.

---

[5] https://www.thezebra.com/resources/driving/how-much-does-towing-a-car-cost/ (last accessed on April 3, 2025).

30.     Together, the Nationwide Class and Pennsylvania Subclass will be collectively referred to as the "Class" or "Classes". Members of these Classes will be referred to as "Class Members".

31.     Excluded from each of the putative classes are any person who falls within the definitions if the person is: (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; (iii) an employee of the Court where this action is pending

32.     Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

33.     The particular members of the (i) Nationwide Class and (ii) Pennsylvania Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from public records.

34.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

35.     The Proposed Classes are so numerous that the joinder of all members is impracticable.

36.     This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

37.      Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

**Typicality: Fed R. Civ. P. 23(a)(3)**

38.      Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Class Vehicle that contained the defective battery module found in all other Class Vehicles.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

39.      Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class he seeks to represent.  Plaintiff has retained counsel competent and highly experienced in complex and class action litigation, and he intends to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

**Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)**

40.      A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members and questions of law and fact common to all class members predominate over questions affecting only individual class members. Class members can be readily identified and notified based on, inter alia, Defendants' business records or other sources including those from the state of California and Pennsylvania.

**Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)**

41.     Common Questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.  Whether Class Vehicles contain the alleged defective battery module;

b.  Whether the defective battery module would be considered material by a reasonable consumer;

c.  Whether the defective battery module would constitute an unreasonable safety risk;

d.  Whether Defendant had a duty to disclose the defect contained in the battery module to Plaintiff and other Class members;

e.  Whether Defendant knew or reasonably should have known of the defective battery module before it sold and leased Class Vehicles to Plaintiff and Class Members;

f.  Whether defective battery module has diminished the value of the Class Vehicles;

g.  Whether the defective battery module is capable of being repaired;

h.  Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing, replacing, or otherwise remedying the defective battery module;

i.  Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective battery module;

j.  Whether Defendant breached the implied warranty of merchantability pursuant to state law and/or the UCC;

k.  Whether Defendant is liable for fraudulent omission;

l.  Whether Defendant was unjustly enriched;

m.  Whether Plaintiff and the other Class members are entitled to damages and

9

other monetary relief.

## CAUSES OF ACTION

### COUNT I
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

42.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

43.    Plaintiff brings this count on behalf of himself and the Classes.

44.    Defendants are merchants and was at all relevant times involved in the distributing, warranting, and/or selling of the Class Vehicles.

45.    The Class Vehicles are "goods" under the relevant laws, and Defendants knew or had reason to know of the specific use for which the Class Vehicles, as goods, were purchased.

46.    Defendants entered into agreements with consumers to sell the Class Vehicles to be used by Plaintiff and Class Members for personal use.

47.    The implied warranty of merchantability included with the sale of each Class Vehicle means that Defendants guaranteed that the Class Vehicles would be fit for the ordinary purposes for which cars are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendants, Plaintiff, and the Class Members.

48.    Defendants breached the implied warranty of merchantability because the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation. After all, Defendants did not indicate that the Class Vehicles would contain a defective battery module.

49.    Given that Plaintiff and Class Members are unable to safely drive the Class Vehicles without risk of the Class Vehicles catching on fire, the Class Vehicles are not fit for their

particular purpose of legal transportation and usage. Defendants' Recall does nothing to truly address this risk, given that there is no explanation on the cause of the Defect. Rather, the Recall places Plaintiff in a much worse bargaining position compared to if Defendants had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

50.    Defendants warranty expressly applies to the purchaser of the Class Vehicles, creating privity between Defendants and Plaintiff and Class Members.

51.    Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendants' warranties and sales.  Defendants' warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

52.    Defendants provided sufficient notice of its breaches of implied warranties associated with the Class Vehicles.  Defendants were put on actual notice of its breach though the contract between Plaintiff, Class members, Defendants, and its review of consumer complaints.

53.    Had Plaintiff, Class Members, and the consuming public known that the Class Vehicles would have a defective battery module that created a fire hazard that could engulf the Class Vehicles in flames at any time, they would not have purchased the Class Vehicles or would have paid less for them.  To reiterate, had Plaintiff and Class Members known of the defective battery module, they would not have purchased Class Vehicles.

54.    As a direct and proximate result of the foregoing, Plaintiff and the Class suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

55.    Plaintiff suffered injury in that she purchased a vehicle that is worthless. For all intents and purposes, Plaintiff's vehicle is now a notoriously unsafe vehicle which could catch fire

at any time, while in park or while driving.

56.     Plaintiff also suffered economic loss in reference to the value of his vehicle.  As a result of Defendants' Recall, Plaintiff's vehicle resale value is now diminished.  When Plaintiff intends to sell his Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendants had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

57.     Plaintiff has suffered damages in that Plaintiff has been inconvenienced by Defendants' Recall and accompanying required repairs. As discussed above, Plaintiff will spend hours upon hours tending to Defendants' recall. Had Defendants produced a vehicle that was roadworthy and reliable, Plaintiff would not have had to spend hours upon hours of his life tending to this Recall. Plaintiff did not bargain for, or pay for, a vehicle that could catch on fire in park or while driving and which he has to park outside due to the risk of fire to his structures such as his garage or home.

## COUNT II
**Violation of the Pennsylvania Unfair Trade Practice and Consumer Protection Law
(PUTPCPL) (73 Pa Stat 201)
(On Behalf of Plaintiff and Subclass)**

58.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

59.     Plaintiff brings this count on behalf of himself and the Classes.

60.     Defendants had actual knowledge that the Class Vehicles suffered from an inherent defective battery module, was defectively designed and/or manufactured, and was not suitable for their intended use prior to their sale.

61.    Having been aware of the defective battery module and knowing that Plaintiff and Class members could not have reasonably been expected to know of the Defect, Defendants had a duty to disclose the battery module defect to Plaintiff and Class Members in connection with the sale of the Class Vehicle. Defendants had a further duty to disclose the Defect because:

a. Defendants were in a superior position to know the true state of facts about the battery module defect contained in the Class Vehicles, and Defendants knew these facts were not known or reasonably discoverable by Plaintiff or Class Members;

b. Given the battery module defect's technical and hidden nature, Plaintiff and Class Members lack the sophistication and expertise in vehicle components that would be necessary to discover the battery module defect on their own;

c. Defendants knew that the battery module defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the omitted facts relating to the Defect were material because they directly impact the safety of the Class Vehicles and would have been part of the decision to buy or lease the Class Vehicles;

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while actively withholding and concealing the material facts about the known defective nature of the Class Vehicles from Plaintiff and Class Members. In uniform advertising and materials provided with each Class Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles

13

contained the battery module defect. Because it volunteered to provide information about the Class Vehicles that it marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

62.    Defendants concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Class Vehicles, in direct breach of its duties.

63.    The fact that Defendants' Class Vehicles contained the defective battery module is a material fact as any system defect that could potentially cause the vehicle to catch on fire is a critical defect, and a reasonable person would find it important when deciding the purchase or lease a new or used motor vehicle and because it directly impacts both the value and safety of the Class Vehicles purchased or leased by the Plaintiff and Class Members.

64.    Defendants were knowledgeable of the falsity of the safety of the defective battery module and/or recklessly disregarded the truth or falsity of the dangerous nature of the battery module defect.

65.    Defendants intended for Plaintiff and Class Members to rely and act upon such falsity as part of Defendants' commercial operations to sell vehicles—which they did by purchasing and leasing the Class Vehicles at the prices they paid while believing that their vehicles would not have a defective battery module that would affect the quality, reliability, and safety of the Class Vehicles.

66.    Plaintiff and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

67.    Plaintiff and Class Members would not have purchased the Class Vehicles had they had known of such battery module defect or would have paid less for them. Plaintiff and the

Class did not know of such battery module defect and relied upon the false presentation of safety in their purchases of Class Vehicles.

68.    The facts concealed or not disclosed by Defendants to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price for them. Whether a vehicle catches fire when the battery cells experience an internal short circuit and create a fire risk is a material safety concern. Had Plaintiff and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

69.    Defendants actively concealed and suppressed these material facts, in whole or in part, in order to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products.  They did so at the expense of Plaintiff and Class Members.

70.    If Defendants had fully and adequately disclosed the battery module defect to consumers, Plaintiff and Class Members would have seen such a disclosure.

71.    Through Defendants' omissions and concealment regarding the battery module defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiff and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

72.    Plaintiff and other Class Members justifiably relied on Defendants' omissions to their detriment.  This detriment is evident from Plaintiff's and Class Members' purchase or lease of Defendants' defective Class Vehicles.

73.    As a direct and proximate result of Defendants' misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages.  Plaintiff and the Class reserve their right to elect either to (a) rescind their purchase or lease of the Defective Vehicles and obtain restitution or (b) affirm their purchase or lease of the Defective Vehicles and recover damages.

74.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Classes' rights and well-being to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

75.    Plaintiff suffered injury through Defendants' conduct in that he suffered economic loss and purchased a vehicle that is now worthless and unsafe.

76.    Plaintiff also suffered economic loss in reference to the value of his vehicle.  As a result of Defendants' Recall, Plaintiff's Vehicle's resale value is now diminished.  When Plaintiff intends to sell his Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendants had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

77.    Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendants' Recall. Plaintiff has been greatly inconvenienced by Defendants' Recall.


**COUNT III**
**UNJUST ENRICHMENT**

78.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

79.    Plaintiff brings this count on behalf of himself and the Classes.

80.    Plaintiff, and the other members of the Classes, conferred benefits on Defendants in the form of monies paid to purchase Defendants' worthless Class Vehicles.

81.    Defendants voluntarily accepted and retained this benefit. Defendants have knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class members.

82.    Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Class Vehicles without providing a working battery module in the Class Vehicles, it would be unjust and inequitable for Defendants to retain the benefit without paying the value thereof.

83.    The circumstances, as described herein, are such that it would be inequitable for Defendants to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

84.    Defendants manufactured, marketed, and sold the Class Vehicles under the guise of these Vehicles being safe, operable, and not subject to catching fire at any moment. Instead, Defendants sold vehicles with an inherent fire hazard that could engulf the car in flames at any moment.  Rather than refunding or reimbursing Plaintiff and Class members the difference in value related to the diminished resale value, Defendants have offered to simply fix the Class Vehicles with a fix that appears to do no more than replace the defective systems with no guarantee that the root cause of the problem is solved.

85.    Because Defendants' retention of the non-gratuitous benefits conferred on them by

Plaintiff and members of the Classes is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

<u>**COUNT IV**</u>
**STRICT LIABILITY: DESIGN DEFECT**

86.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

87.    Plaintiff brings this count on behalf of himself and the Classes.

88.    At all times relevant, Defendants were engaged in the business of designing, manufacturing, marketing, testing, selling, distributing, and supplying the Class Vehicles and otherwise placed the Class Vehicles in the market and stream of commerce for sale to the consuming public.

89.    Plaintiff and Class Members used the Class Vehicles in a reasonably foreseeable manner.

90.    At all times, Defendants held final design approval authority for the subject Class Vehicles.

91.    The battery module defect could happen at any time when, under certain conditions, the battery cells in the class vehicles experience an internal short circuit, potentially leading to a risk of a thermal event and, potentially, a fire.

92.    The Class Vehicles' design is excessively dangerous.  The risk of danger in the Class Vehicles' design and manufacture outweighs any benefit of the design.

93.    Defendants knew or should have known that Plaintiff and the Class Members would purchase and use the Class Vehicles without inspection for defect. Aside from being entirely uncommon for a consumer to disassemble and inspect a vehicle, it is also unlikely to be permitted by Defendants' dealerships and/or other resellers.

94.    As a direct and proximate result of Defendants' conduct, including actions, omissions, and misrepresentations, Plaintiff and the Class have sustained damages:

    a.    Economic damages due to this Defect as they are now stuck with vehicles that are unsafe and relatively worthless when compared to the purchase price; and

    b.    Noneconomic damages including emotional distress, inconvenience, loss of enjoyment, past and future.

**COUNT V**
**STRICT LIABILTY: MANUFACTURING DEFECT**

95.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

96.    Plaintiff brings this count on behalf of himself and the Classes.

97.    At all times relevant, Defendants were engaged in the business of designing, manufacturing, marketing, testing, selling, distributing, and supplying the Class Vehicles and otherwise placed the Class Vehicles in the market and stream of commerce for sale to the consuming public.

98.    Along with Class Vehicles, Defendants design, manufacture and produce all sorts of other vehicles. Given Defendants' other vehicles are capable of having a battery module in which its battery cells can short circuit internally, leading to a fire risk, it logically follows that the Class Vehicles would share the same fate.

99.    The Class Vehicles presumably are capable of safe operation as Defendants produce many other vehicles that are capable of such safety and adequate operation. Unfortunately, this presumption is not reality. The Class Vehicles are in danger of short-circuiting and

catching fire at any moment due to the defective battery module.

100.    Plaintiff and Class Members used the Class Vehicles in a reasonably foreseeable manner.

101.    At all times, Defendants held final manufacture approval authority for the subject Class Vehicles.

102.    The Class Vehicles' design is excessively dangerous.  The risk of danger in the Class Vehicles design and manufacture outweighs any benefit of the design.

103.    Defendants knew or should have known that Plaintiff and Class Members would purchase and use the Class Vehicles without inspection for defect.  Aside from being entirely uncommon for a consumer to disassemble and inspect a vehicle, it is also unlikely to be permitted by Defendants' dealership and/or other resellers.

104.    As a result of this faulty manufacture of the battery module, the Class Vehicles are now relatively worthless when compared to their original purchase price and relative value and are unsafe.

105.    Given the loss of value and lack of safety, Plaintiff and Class Members have been damaged and will continue to suffer damages.

### COUNT IV
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY
### ACT (15 U.S.C. § 2301 *ET SEQ.*)

106.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

107.    Plaintiff brings this count on behalf of himself and the Classes.

108.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ET SEQ ("MMWA").

109.    Defendants are a "supplier" and "warrantor" within the meaning of the MMWA.

110.    The Class Vehicles are "consumer products" within the meaning of the MMWA.

111.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

112.    Defendants' express warranties are written warranties within the meaning of the MMWA.

113.    Defendants breached its warranties by offering for sale and selling the Class Vehicles, which were by design and construction defective and unsafe due to the battery module defect recall. Defendants' actions subjected Plaintiff and the Class to danger as well as monetary damages in that the Class Vehicles are inherently worth less compared to their value had the Class Vehicles been free of battery module defect.

114.    Additionally, Plaintiff and the Class Members suffered damages in that they have been greatly inconvenienced by this Recall and battery module defect as Plaintiff and the Class Members have had to collectively spend thousands of hours and thousands of dollars in time and costs related to repairing the battery module defect.

115.    Defendants have breached and continues to breach its written and implied warranties of safety and reliability, thereby damaging Plaintiff and the Class, when the Vehicles fails to perform due to the Defect.

116.    As a result of these breaches, Plaintiff and Class Members have suffered damages.

117.     Plaintiff and Class Members seek full compensatory, punitive, and consequential damages as allowed by law, and any other relief to which Plaintiff and the Class may be entitled.

118.    Plaintiff and Class Members suffered injury through Defendants' conduct in that

Plaintiff and the Class are now owners of vehicles that are worth significantly less, given the Defect and the notoriety therein.

119.    Plaintiff and Class Members suffered injury through Defendants' conduct in that Plaintiff and the Class have, or will have to, spend hours upon hours of their own time, and thousands of dollars in towing fees, in seeking repair for these Class Vehicles.  Regardless of Defendants' free repair, Plaintiff and the Class are still required to spend hours in time and thousands of dollars in bringing their vehicles to Defendants' dealership for repair.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, on behalf of himself and members of the Classes, requests that the Court enter judgment in their favor and against Defendants, awarding as follows:

A.  Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel:

B.  Declaring that Defendants are financially responsible for notifying the Proposed Class Members of the pendency of this action;

C.  Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D.  Scheduling a trial by jury in this action;

E.  Awarding pre- and post-judgment interest on any amounts awarded, as permitted by law;

F.  Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G.  Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby requests

a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so

triable.

Dated: April 8, 2025

By: /s/ Stuart A. Carpey
**CARPEY LAW, P.C.**
Stuart A. Carpey
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
Tel: 610-834-6030
Fax: 610-825-7579
scarpey@carpeylaw.com
*Attorneys for Plaintiff and Putative Class*